# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

| | | |
|---|---|---|
| JOHN CARMAN, | | |
| Plaintiff, | | No. C15-4059-CJW |
| vs. | | |
| CAROLYN W. COLVIN, | | **MEMORANDUM OPINION AND ORDER** |
| Acting Commissioner of Social Security, | | |
| Defendant. | | |

_____

Plaintiff, John Carman (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying claimant's application for disability insurance benefits (DIB) and supplemental security income (SSI) under Title II and XVI of the Social Security Act (Act), 42 U.S.C. §§ 405(g), 423, 1383(c)(3). Plaintiff contends the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision. For the reasons that follow, the court affirms the Commissioner's decision.

## I.    BACKGROUND

Claimant was born in 1975, has completed the eleventh grade, and has past work as a dish washer, car washer, and warehouse manager. AR 47, 48, 64 & 65. Claimant identifies as a person of transgender status, and has indicated a wish to be addressed by

the name "Joshelyn."[1] AR 617. The court respectfully honors this request and from this point forth will refer to claimant using only female pronouns.

Claimant filed applications for DIB and SSI on March 20, 2012, alleging a disability onset date of February 1, 2010. AR 9 & 44. She contends she is disabled due to the following impairments: degenerative disc of cervical spine; major depressive disorder, severe without psychotic features; bipolar disorder; and schizoaffective disorder. Doc. 13, at 4. Her claims were denied on July 23, 2012. AR 133–37.

Claimant requested reconsideration on October 22, 2012, which was denied on November 5, 2012. AR 145–53. She then requested a hearing before an Administrative Law Judge (ALJ) on December 10, 2012. AR 154–55. The ALJ conducted a video hearing on October 16, 2013, at which claimant, her attorney, and a vocational expert (VE) testified. AR 42–69. On January 3, 2014, the ALJ issued a decision denying claimant's claims. AR 18–29. On February 18, 2014, claimant sought review from the Appeals Council, which denied her request on May 21, 2015. AR 13–14 & 1–5. The ALJ's decision, thus, became the final decision of the Commissioner. AR 1; 20 C.F.R. § 404.981.

Claimant filed a complaint (Doc. 4) in this court on July 2, 2015, seeking review of the ALJ's decision.[2] On September 23, 2015, with the consent of the parties (Doc. 12), the Honorable Mark W. Bennett transferred this case to a United States magistrate judge for final disposition and entry of judgment. The parties have briefed the issues, and the matter is now fully submitted.

---

[1] In the record, social worker Ivy Clausen spelled claimant's chosen female name as both "Joshelyn" and "Joshlyn." *See* AR 586–617 & 620–52.

[2] Initially claimant alleged Hepatitis C as an impairment, but the ALJ found there was no supporting medical evidence of it (AR 20–21). The court agrees (*see* AR 426–30). Furthermore, claimant has removed Hepatitis C from her list of impairments (*see* Doc. 13, at 4).

## II. *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. An individual has a disability when, due to his physical or mental impairments, he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled. 20 C.F.R. §§ 404.1566(c)(1)-(8), 416.966(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707–08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful" activity is work done for pay or profit, even if the claimant does not ultimately receive pay or profit. 20 C.F.R. § 404.1572(b).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and mental impairments.

If the impairments are not severe, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is not severe if "it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c), 416.921(a); *Kirby*, 500 F.3d at 707.

The ability to do basic work activities is defined as having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include: "(1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting." 20 C.F.R. §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of her past relevant work. If the claimant can still do her past relevant work then she is considered not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). Past relevant work is any work the claimant has done within the past 15 years of her

4

application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 416.960(b)(1). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC is based on all relevant medical and other evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Id.* If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC, as determined in Step Four, will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 416.912(f), 416.920(a)(4)(v). The Commissioner must show not only that the claimant's RFC will allow him or her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make the adjustment, then the Commissioner will find the claimant not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. THE ALJ'S FINDINGS

The ALJ made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through March 31, 2015.

2.  The claimant has not engaged in substantial gainful activity since February 1, 2010, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: degenerative disc of the cervical spine; major depressive disorder, severe without psychotic features; bipolar disorder; and, schizoaffective disorder (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  The claimant has the residual functional capacity to perform a range of medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) in that the claimant could lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk (with normal breaks) about 6 hours in an 8-hour workday and sit (with normal breaks) about 6 hours in an 8-hour workday. The claimant can occasionally climb ladders, ropes or scaffolds, and frequently balance, stoop, kneel, crouch, crawl and climb ramps and stairs. The claimant can perform simple tasks that are not performed as integral part of a team, involving relatively few work place changes; [s]he can occasionally interact with supervisors and coworkers but must avoid interaction with the general public.

6.  The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

7.  The claimant was born on March 31, 1975, and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. §§ 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 C.F.R. §§ 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 1, 2010, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

AR 18–29. To render his decision regarding claimant's RFC, the ALJ relied on the following opinions in the record: (a) substantial weight was given to the opinions of State agency medical consultants John May, MD and Jan Hunter, DO; (b) substantial but partial weight was given to State agency medical consultants Scott Shafer, PhD and Myrna Tashner, EdD; (c) ALJ found claimant's community support worker, Julie Schaap, to be only partially credible. AR 27. From reviewing the record, the court believes the State agency medical consultants to be nonexamining.[3]

Here, the court summarizes these opinions as well as the other evidence on the record.[4]

Dr. John May, MD

Dr. May is a State agency medical consultant. On July 10, 2012, Dr. May found claimant was not disabled. AR 93–94. Dr. May determined claimant could lift or carry

---

[3] The court assumes the State agency consultants relied, at least in part, on the consultative examination by nurse practitioner Amy J. Tegels, APRN. AR 535–40.

[4] All of these professionals, with the exception of social worker Ivy Clausen, used male pronouns in referring to claimant. The court has adjusted these references to reflect a female pronoun.

up to 50 pounds, frequently lift 25 pounds, stand for 6 hours in an 8-hour day, sit for 6 hours in an 8-hour day, use a push/pull motion for 6 hours in an 8-hour day, climb stairs and ramps frequently, climb ladders/ropes/scaffolds occasionally, balance frequently, stoop (includes bending at waist) frequently, kneel frequently, crouch frequently, and crawl frequently. Dr. May stated that although claimant asserts involvement in a car accident at thirteen years of age caused current neck and back pain, the medical evidence does not support these pain allegations. Dr. May relied on claimant's cervical spine x-ray, which showed moderate degenerative disc disease with "endplate spurring and slight loss of disc space at C6-7 and mild degenerative facet arthrosis at C-4 and C4-5," and the finding that claimant's ROM (range of motion), except for cervical spine, was normal. Dr. May also noted that claimant's credibility is eroded due to claimant's claims of experiencing pain whenever she bends or twists, yet the ROM showed no problems with bending and twisting. Dr. May commented that claimant is not on any medication for either cervical spine pain or headaches. Lastly, Dr. May found that due to claimant's mental conditions, claimant does not work well with people or authority figures. The ALJ gave Dr. May's medical opinion substantial weight. AR 27.

Jan Hunter, DO

Dr. Hunter is a State agency consultant. On October 31, 2012, Dr. Hunter determined claimant was not disabled. AR 129. Dr. Hunter found that despite claimant's arthritis in her back and mental conditions, she still has good use of her arms, legs, and hands, manages her own affairs, interacts appropriately, and takes care of her daily needs. AR 129. Thus, claimant, even with her limitations due to her impairments, would be capable of performing work similar to her past work as a dishwasher. AR 129. The ALJ gave Dr. Hunter's medical opinion substantial weight. AR 27.

## Scott Shafer, PhD

Scott Shafer, PhD, is a State agency medical consultant. On June 6, 2012, Dr. Shafer found claimant has a primary, severe impairment of affective disorders and a secondary, severe impairment of fractures of upper extremities. AR 91. Dr. Shafer found the presence of "A" and "B" criteria, but not "C" criteria, for 12.03-Schizophrenic, Paranoid, and Other Psychotic Disorders and 12.04-Affective Disorders. AR 91–92. Also, Dr. Shafer found claimant has a "mild" restriction of activities of daily life, "moderate" difficulty in maintaining social functioning, "moderate" difficulty in maintaining concentration, persistence or pace, and no periods of repeated decompensation. AR 91. The ALJ gave Dr. Shafer's medical opinion substantial but partial weight. AR 27.

## Myrna Tashner, EdD

Myrna Tashner, EdD (doctoral graduate in education) is a State agency medical consultant. On November 5, 2012, Dr. Tashner found claimant had a primary, severe impairment of affective disorders and a secondary, severe impairment of DDD (Disorder of Back-Discogenic and Degenerative). AR 121. Dr. Tashner found the presence of "A" and "B" criteria, but not "C" criteria, for 7240-DDD and 2960-Affective Disorders. AR 121. Dr. Tashner also found claimant had a "mild" restriction of activities of daily life, "moderate" difficulty in maintaining social functioning, "moderate" difficulty in maintaining concentration, persistence or pace, and no periods of repeated decompensation. AR 122. The ALJ gave Dr. Tashner's medical opinion substantial but partial weight. AR 27.

## Julie Schaap

On April 10, 2012, Ms. Schaap, claimant's community support worker, filled out a "Function Report-Adult-Third Party." AR 274. Ms. Schaap has an ongoing relationship with claimant where they communicate at least once a month. Ms. Schaap

wrote that claimant performed the following activities: cleans her apartment, grocery shops, ventures outside daily, spends some time with relatives. AR 274-79. Ms. Schaap also noted that claimant has no income, cannot lift heavy objects, has difficulty concentrating, has difficulty sleeping, has trouble controlling emotions, and frequently gets into fights. AR 274–79. The ALJ assessed Ms. Schaap's testimony to be based only on claimant's subjective complaints, as she never resided with claimant, so she was only partially credible. AR 27.

Patel Reddy, PA and Dr. Ronald Brinck, MD

Patel Reddy, PA and Dr. Ronald Brinck, MD both are employed at Siouxland Mental Health Center, and treated claimant from at least June 2011 to February 2012. AR 446–508 (Physicians' Assistant Reddy saw claimant on several occasions and the treatment notes indicate that Dr. Brinck co-signed all of Reddy's treatment notes). On July 20, 2011, Reddy and Dr. Brinck prescribed claimant the following medication plan: Zyprexa 10 mg to be taken in the evenings, Lexapro 10 mg to be taken during the day. AR 506. On September 12, 2011, the current medication regime was continued with the addition of a two-month trial of Hydroxyzine 50 mg BID. AR 483. On January 19, 2012, claimant's medication plan was altered to increase Lexapro to 20 mg and decrease Hydroxyzine to 25 mg BID, otherwise the plan was unchanged. AR 453. Although claimant reported the medications were making her tired, she nonetheless said she was regularly taking her medication. *See* AR 446–508. Also, Reddy and Dr. Brinck gave claimant a Global Assessment of Functioning (GAF) score of 46-50 on July 20, 2011, a subsequent score of 53 on September 12, 2011, and a score of 56 on January 19, 2012.[5]

---

[5] A GAF score of 41-50 indicates "serious symptoms . . . or any serious impairment in social, occupational, or school functioning . . . ." *Nowling v. Colvin*, 813 F.3d 1110, 1124 n. 3 (8th Cir. 2016) (quoting *Pate-Fires v. Astrue*, 564 F.3d 935, 937–38 n.1–3 (8th Cir. 2009)). Scores of 53 and 56 indicate moderate symptoms. *Id*. The trend noted by the Court of Appeals for the

AR 453, 483 & 506.  The ALJ did not cite these medical professionals by name, but, nonetheless, cited their opinions in his decision.  AR 25 (citing to Exhibits 2F, 5F, 7F for the findings that claimant was taking and tolerating her prescribed medications; claimant's initial GAF score was 46-50; subsequent scores of 53 and then later 56; topics of claimant's individual therapy sessions included dressing as a woman, wanting to be acknowledged with chosen female name, experiencing improved sleep and other improvements made through treatment).

Ivy Clausen, LISW

Ivy Clausen is an LISW (licensed independent social worker).  Ms. Clausen conducted therapy sessions with claimant at the Siouxland Mental Health Center.  Ms. Clausen's first session with claimant was on June 9, 2011, and Ms. Clausen continued to meet with claimant on a relatively stable, weekly-basis until at least August 2013 (the record only provides evidence up to this date).  AR 620–64.  The ALJ did not cite Ms. Clausen by name in his decision, but again, the ALJ's decision cited the portions of the record (Exhibits 2F, 5F, 7F, 11F) which include Ms. Clausen's therapy session notes.  AR 25.

Siouxland Community Health Center

The record includes claimant's several visits to the Siouxland Community Health Center where claimant was treated by an array of medical professionals (Jacobs, ARNP;

_____

Eighth Circuit is that GAF scores only have limited importance.  *Id.* (citing *Jones v. Astrue,* 619 F.3d 963, 973–74 (8th Cir. 2010) (internal citations omitted) ("Moreover, the Commissioner has declined to endorse the [GAF] score for use in the Social Security and [Supplemental Security Income] disability programs and has indicated that [GAF] scores have no direct correlation to the severity requirements of the mental disorders listings.")).  The court acknowledges that this is the trend, yet still briefly mentions claimant's GAF scores in its opinion here as the ALJ's decision mentioned such.

Heaton, MD; Swanson, MD; Wilkinson, PAC; and Guthmiller, ARNP). On June 22, 2011, claimant was treated by Christopher L. Jacobs, an Advanced Registered Nurse Practitioner (ARNP) who prescribed claimant Debrox Soln (Carbamide Peroxide Soln)—10 drops to both ears twice a day for 4 days. AR 440.

On February 14, 2012, claimant was treated by Dr. Julia S. Heaton, MD. AR 433. Siouxland Community Health Center labeled Dr. Heaton as claimant's "primary physician" as of April 5, 2012. AR 418. Dr. Heaton removed Debrox Soln from claimant's medication plan and added 20 mg of Lexapro (Escitalopram Oxalate) for mood. AR 418 & 433. Furthermore, Dr. Heaton ordered Hepatitis C testing. Tests were performed for "Hepatitis B Surface Antigen," "Hepatitis B Core Antibody," "Hepatitis A IGM Antibody," "Hepatitis C RNA (PCR)," "Hepatitis C Virus Genotype." AR 424–30. The tests all reported a result of "NOT DETECTED." AR 424–30. The ALJ did not mention Dr. Heaton in his decision but cited Exhibit 4F (Dr. Heaton's treatment notes) in his decision as support for his finding that claimant no longer had hepatitis C as an impairment. AR 20–21.

On November 9, 2012, Dr. Thor D. Swanson, MD, treated claimant for a follow-up visit and dental pain. AR 685–91. Dr. Swanson entered scripts for the following medications: Aspirin 81 mg (to protect the heart), Ibuprofen 800mg (for dental pain), Penicillin V Potassium 500 mg (for dental infection), Pravachol 200 mg (for cholesterol), Premarin .625 mg (estrogens), and Spironolactone 50 mg (to stop hair growth). AR 689–90.

On January 14, 2013, claimant was treated by Cliff W. Wilkinson, Physician Assistant, Certified (PAC), who prescribed claimant Augmentin 875-125 mg (penicillin-type antibiotic) for 10 days. AR 684.

On March 6, 2013, claimant had a follow-up with Dr. Swanson. AR 680. At the follow-up visit, Dr. Swanson modified claimant's medications by adding Provera 2.5mg daily and increasing Premarin to .9 mg daily. *Id.*

On July 22, 2013, Cynthia A. Guthmiller, ARNP, saw claimant for a follow-up visit and small toe pain. AR 672. Guthmiller prescribed Cephalexin 500 mg for 10 days (for infection). AR 674.

On September 16, 2013, Christopher Jacobs, ARNP, treated claimant on a walk-in appointment. AR 668. Claimant reported being ill for one week. AR 669. Jacobs prescribed Zithromax 250 mg (antibiotic). AR 671.

Overall, the AJL cited both Exhibits 4F and 12F in his decision (includes the treatment notes from the above listed medical professionals at Siouxland Community Health Center). AR 21, 24 & 25.

Mercy Medical Center in Sioux City

Claimant was treated by both Thomas Benzoni, DO and Joseph Liewer, MD on separate occasions. First, Dr. Thomas Benzoni, employed at Mercy Medical Center in Sioux City, treated claimant from July to August in 2009 for complications arising from a small lesion on claimant's left knee. AR 380–83. The ALJ did not cite Dr. Benzoni in his decision, nor did the ALJ reference Exhibit 1F (Dr. Benzoni's treatment notes). Also, Dr. Joseph Liewer, employed at Mercy Medical Center in Sioux City, treated claimant in September of 2009 for a right ankle sprain. AR 359. Dr. Liewer gave claimant a shot of Torado and prescribed Lortab for discomfort. AR 359. The ALJ did not cite Dr. Liewer in his decision, nor did the ALJ reference Exhibit 1F (Dr. Liewer's treatment notes).

## IV.    SUPPLEMENTAL EVIDENCE SUBMITTED ON APPEAL

Claimant attached two post-hearing exhibits to her appeal (Exhibits 20E & 21E). The court now examines this supplemental evidence.

### A. Exhibit 20E: Brief and Argument

Here, claimant, through her attorney, argues the ALJ did not weigh the evidence correctly in determining that claimant only had mild restrictions of daily activity, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence, and pace.  AR 9.  Also, claimant argues the ALJ erred in finding claimant did not take all of her medication regularly.  AR 9.  Claimant explains she cannot afford the pain medication prescribed by Siouxland Community Health Center.  *Id.*[6]  Also, claimant alleges the ALJ erred in relying on an inaccurate hypothetical question to the VE.  AR 10.  Lastly, claimant asserts the ALJ did not properly weigh the medical records in Exhibits 2F and 3F (from Siouxland Mental Health Center).  AR 11.

### B. Exhibit 21E: Affidavit of John A. Carman

Claimant claims the ALJ was in "complete error" to find she did not take her medication.  AR 12.  Further, she claims she takes her medication from Siouxland Mental Health Center as it is provided to her for free, but she does not take the pain medication for her back and neck from Siouxland Community Health Center because she cannot

---

[6] The court is perplexed by claimant's argument.  After extensively reviewing all of claimant's medical records, the court notes that Dr. Thor D. Swanson, on 11/09/2012 at 1:58PM removed the prescription script for "Gabapentin 300 mg caps . . . for neck pain, chronic pain, sleep." AR 688–91.  Furthermore, the court found no other active script for pain medication prescribed by any of the five treating sources at Siouxland Community Health Center or anywhere else. Thus the claim made in February 2014, that claimant cannot afford her pain medication, is moot as the record shows no active script for such medication since November 2012.

afford it. AR 12. There must be some confusion present here because the ALJ's decision held exactly what claimant is alleging to be true in her affidavit (that claimant regularly takes her medication prescribed by Siouxland Mental Health Center, but did not take her pain medication prescribed by Siouxland Community Health Center due to her inability to afford it). Specifically, the ALJ noted that claimant claimed she did not take Gabapentin for her neck and back pain due to its cost, and that such prescription was removed from claimant's prescription plan in November 2012. AR 24–25; *see supra* note 6. The court's own review of the record fully supports this finding. Further, the ALJ noted that claimant was taking medication prescribed by Siouxland Mental Health Center "as prescribed" and was showing "continued improvement." AR 25.

## V.     *THE SUBSTANTIAL EVIDENCE STANDARD*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (internal quotation omitted).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but we do not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (internal citation

omitted).  The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it.  *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010).  The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial."  *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence.  *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989).  The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo."  *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)).  Instead, if after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits."  *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)).  This is true even in cases where the court "might have weighed the evidence differently."  *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)).  The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision."  *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) (internal citation omitted) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

# VI.  DISCUSSION

Ultimately, the court finds the ALJ did not legally err and his decision was supported by substantial evidence considering the record as a whole.  The court now turns to address claimant's specific objections about the ALJ's decision.  Namely, the claimant asserts the following two claims: (1) "[t]he ALJ made improper credibility findings as to the mental health problems of Claimants [sic]," and (2) "[t]he ALJ asked incomplete hypothetical question to the VE resulting in an incorrect finding that Claimant could work."  Doc. 13, at 6.

## A. Substantial Evidence Supported ALJ's Finding That Claimant Was Less Than Fully Credible

Claimant argues the ALJ failed to make a correct credibility determination in regard to her subjective mental health complaints.  Also, claimant argues the ALJ relied too heavily on the State agency's doctors rather than on treating physicians' and medical providers' notes and cites *Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir. 1990), for the proposition that an ALJ may not substitute his own judgment over that of the physicians in the guise of a credibility finding.  Doc. 13, at 8.  Lastly, claimant also argues that the ALJ erred in finding that she did not take all of her medication on a regular basis and claimant cites to her supplemental affidavit (AR 12).  *Id.* at 9.

The court finds the ALJ correctly considered the relevant *Polaski* factors in determining claimant's credibility.  Under the *Polaski* factors, an ALJ must consider the "claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:  (1) claimant's daily activities; (2) duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions." *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984).  In *Lowe*, the Eighth Circuit

Court of Appeals stated, "[t]he ALJ was not required to discuss methodically each *Polaski* consideration, so long as he acknowledged and examined those considerations before discounting [claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (internal citation omitted). If the ALJ gives a good reason for discrediting a claimant's credibility, then the court will defer to the ALJ's judgment "even if every factor is not discussed in depth." *Dunahoo v. Apfel,* 241 F.3d 1033, 1038 (8th Cir. 2001).

The court also notes that "[a]lthough the ALJ may disbelieve a claimant's allegations of pain, credibility determinations must be supported by substantial evidence." *Jeffery v. Sec'y of Health & Human Servs.*, 849 F.2d 1129, 1132 (8th Cir. 1988) (internal citation omitted). "Moreover, the ALJ must make express credibility determinations and set forth the inconsistencies in the record that lead him to reject the claimant's complaints." *Id.* "Where objective evidence does not fully support the degree of severity in a claimant's subjective complaints of pain, the ALJ must consider all evidence relevant to those complaints." *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001) (internal citation omitted). In evaluating a claimant's subjective complaints of pain, an ALJ may rely on a combination of his personal observations and a review of the record to reject such complaints. *Lamp v. Astrue,* 531 F.3d 629, 632 (8th Cir. 2008). However, the ALJ may not solely rely on his personal observations to reject such claims. *Id.* Thus, "[s]ubjective complaints can be discounted [by the ALJ], however, where inconsistencies appear in the record as a whole." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003) (citing *Polaski*).

In plaintiff's brief (Doc. 13), claimant alleges the ALJ erred in finding she had mild restrictions in daily living, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence, and pace. Doc. 13, at 8. Specifically, claimant argues she testified that: she cannot leave her apartment for two to three days out of the

18

week at least three times a month; experiences pain while sitting, standing, and lying down; is unable to control her anger and emotions (which is supported by community social worker's testimony); is unable to get along with others; has major depressive disorder, schizoaffective disorder, bipolar disorder and gender disorder; and has an impaired ability to concentrate and follow instructions. Doc. 13, at 7–8, *see also* AR 49–63.

Here, the ALJ first determined "claimant's history of gonorrhea, methicillin-resistant staphylococcus aureus infection, alcohol and drug abuse, in reported remission and gender identity disorder are not severe." AR 21. The court finds Exhibits 4F, 8F (medical tests showing claimant's ROM is normal), and 9F support this finding.

Then the ALJ determined the claimant had mild restrictions in her daily living activities. AR 22. The ALJ stated that claimant is "able to perform personal care, dishes, sweeping, cleaning and laundry. The claimant buys food items and can feed [her]self." AR 22. On claimant's Function Report, claimant answered that she prepares her own meals, washes dishes, mops her floors, sweeps, cleans, launders clothes, shops for groceries and personal items, ventures outside twice a day, and visits the library, convenience stores, and the mental health center on a regular basis. AR 287–88.

The ALJ also determined that claimant had moderate difficulties in social functioning. AR 22. The ALJ's decision reads: "[t]he evidence of record documents some occasional fluctuations in mood episodes and less paranoia. The claimant reports that [s]he does not get along well with authority figures; however, [her] providers describe [her] behavior as cooperative and pleasant with good eye contact (exhibits 7F and 11F)." AR 22. Ultimately, the ALJ found that claimant "can occasionally interact with supervisors and coworkers but must avoid interaction with the general public." AR 23. Claimant testified at the hearing that "I do not socialize with people because I get mad real easy, and my temper flies." AR 49. Yet, social worker Ivy Clausen's therapy

session notes describe claimant as being neatly groomed, casually dressed, exhibiting cooperative behavior, and maintaining good eye contact during sessions. AR 620–53.[7] In these sessions, claimant admitted to feeling comfortable in her weekly support group. AR 529. Furthermore, claimant testified to her friendship with Vicki. AR 603.

Regarding concentration, persistence, or pace, the ALJ found claimant had moderate difficulties. AR 22. The ALJ found that "[a]lthough the claimant alleges issues with concentration and handling stress and changes in routine, [s]he is able to use public transportation, shop for groceries and pay [her] bills. [She]reports that [s]he finishes what [s]he starts and has no problems with following written and spoken instructions (exhibit 7E)." AR 22. Further, the ALJ notes that "[i]n treatment records, the claimant describes [her] concentration as fair. [Her] mental health providers note some complaints of weird thoughts in [her] mind and paranoia that are improved with medication (exhibits 7F, 1OF and 11F), which could cause some problems with sustained attention with complex instructions." AR 22. Ultimately, the ALJ determined claimant can perform simple tasks. AR 23. Julie Schaap, claimant's community support worker, stated: "John is unable to concentrate + has difficulty controlling [her] emotions." AR 274. The ALJ determined Ms. Schaap based her testimony only on claimant's subjective complaints, as Ms. Schaap has not resided with claimant at any point, thus, Ms. Schaap's testimony was only partially credible. AR 27. Therapy session notes taken by Ms. Clausen indicate that claimant testified to her concentration being fair. *See* AR 446–96

---

[7] Ms. Clausen, LISW, is not an "acceptable medical source" under the Social Security Administration's regulations. 20 C.F.R. § 404.1513(a). But, the regulations state "[i]n addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include . . . [p]ublic and private social welfare agency personnel." 20 C.F.R. § 404.1513(d)(3). Thus, the ALJ may consider Ms. Clausen's session notes.

& 620–664 (session notes from June 2011 to August 2013). Also on the Function Report, claimant wrote that she has "no problem" following written instruction, has "no problem" following verbal instruction, can pay attention for "10 minutes," and finishes things (*e.g.*, a conversation) that she starts. AR 290.

From the court's best understanding of plaintiff's brief (Doc. 13), claimant is only appealing the ALJ's credibility determination regarding her mental impairments. Yet, claimant also briefly mentions her alleged pain and physical limitations stemming from a childhood car accident. Doc. 13, at 7. Despite claimant's assertion that she suffers constant neck and back pain, the State agency consultant—Dr. May—found such claims of subjective pain unsubstantiated from claimant's spinal x-ray and claimant's, relatively normal, ROM testing results. AR 93–94. The ALJ properly found the medical evidence in the record supported a finding that claimant had both normal alignment and mobility of her head, spine, ribs, neck, upper extremities, and pelvis. AR 24.

Within claimant's credibility argument, she asserts the ALJ relied too heavily on the State agency's doctors rather than on treating physicians' and medical providers' notes. Doc. 13, at 9. Claimant cites *Ness v. Sullivan*, 904 F.2d at 435 as support that an ALJ may not substitute his own judgment over that of the physicians in the guise of a credibility finding. Doc. 13, at 8. The court finds claimant's reliance on the *Ness* case misplaced. In *Ness*, the ALJ ignored a treating source's opinion regarding the dangers associated with the claimant's combined impairments of depression and heart problems, and concluded from his personal observation, at the hearing, that claimant appeared healthy. *Ness*, 904 F.2d at 435. Such is not the case here. The ALJ did not substitute his own judgment over those of a treating source; rather, the ALJ only relied on the medical evidence present on the record and did not rely solely on his personal observations from the hearing. Thus, the court agrees with the Commissioner that claimant fails "to point out exactly" how the ALJ erred and that there "is absolutely no

indication that he [the ALJ] relied more on their [State agency consultants] opinions rather than those of the treating providers." Doc. 14, at 9. A treating source is "defined as a 'physician, psychologist, or other acceptable medical source' who treats the claimant." *Lacroix v. Barnhart*, 465 F.3d 881, 885 (8th Cir. 2006) (citing 20 C.F.R. §§ 404.1502, 416.902). Ideally, the ALJ should have identified and listed the treating sources in his decision. The ALJ, at least, did reference the relevant treating medical sources (by exhibit numbers) in his decision. From the court's own review of the record, the court believes the claimant's treating sources include: Dr. Ronald Brinck, MD (from the Siouxland Mental Health Center), Dr. Julia S. Heaton, MD (Siouxland Community Health Center), Dr. Thor D. Swanson (Siouxland Community Health Center), Dr. Joseph Liewer, MD (Mercy Medical Center), and Dr. Thomas Benzoni, DO (Mercy Medical Center). *See* 20 C.F.R. § 404.1513 (defining acceptable medical source). Some of these treating sources had brief treatment encounters with claimant while others had much lengthier treatment relationships with claimant. The ALJ cited Dr. Brinck (Exhibits 5F/10F), Dr. Heaton (Exhibit 4F), and Dr. Swanson (Exhibit 12F) in his decision. *See* AR 21–26. The court notes that the ALJ did not directly cite to Dr. Liewer and Dr. Benzoni—treated claimant in 2009 for an ankle sprain and knee lesion—(Exhibit 1F) in his decision. Even with such omission (which does not, in fact, imply the ALJ failed to review and consider the opinions of Dr. Liewer and Dr. Benzoni), the court concludes from its extensive review of the record that the weight of the medical evidence is consistent, and the ALJ's credibility determination is supported by substantial evidence.

Lastly, claimant asserts the ALJ erred in finding she does not regularly take all of her medication. Claimant asserts in her post-hearing brief (AR 9–11) and affidavit (AR 12) that she regularly takes her medication prescribed by Siouxland Mental Health Center as it is free, but cannot afford (and so does not take) her pain medication prescribed by Siouxland Community Health Center. *See supra* Section IV(A, B) (discussing claimant's

post-hearing brief and affidavit). The court finds claimant's argument meritless. What the claimant alleges as true is exactly what the ALJ found. AR 24–25. The ALJ wrote in his decision:

> Ongoing treatment records show that it was not until June 28, 2012, when the claimant presented to [her] provider with complaints of neck pain and was prescribed Gabapentin. However, when seen in follow-up on August 22, 2012, [s]he reported that [s]he had not been taking Gabapentin for [her] neck pain because [s]he could not afford it at the time. There were no new pain complaints . . . . On November 9, 2012, medication for neck pain was removed from the claimant's medication list (exhibit 12F). The claimant alleges that [s]he is also disabled by mental impairments, but the evidence supports a conclusion that the claimant has shown some improvement with medication and that [her] moods have reportedly stabilized (exhibits 2F-3F, 5F, 7Fand 10F-11F) . . . . Treatment records show that the claimant followed medication management [for mental impairments] . . . . At a medication visit on January 19, 2012, the claimant replied that [s]he was taking [her] medication as prescribed . . . . The evidence shows that the claimant has continued to be compliant with attending therapy and medication checks on a regular basis.

*Id.* Thus, the ALJ did, indeed, determine that claimant complied with her prescribed medication plan from Siouxland Mental Health Center, and that claimant did not take her pain medication (Gabapentin) prescribed by Siouxland Community Health Center due to her inability to afford it. The court agrees with the Commissioner. Doc. 14, at 8 ("Inexplicably, plaintiff argues that the ALJ erred in finding that she did not take all of her medications on a regular basis . . . plaintiff fails to cite where the ALJ made such a statement in his decision."). An impairment that can be controlled by medication or treatment is not a disabling impairment. *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (quoting *Roth v. Shalala,* 45 F.3d 279, 282 (8th Cir.1995)). Also the "[f]ailure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits." *Brown*, 390 F.3d at 540 (quoting *Roth*, 45 F.3d at

282). A court may find a claimant's inability to afford his or her prescribed medication may be a justifiable excuse, and thus, would not bar a finding of disability. *See Brown*, 390 F.3d at 540 (quoting *Tome v. Schweiker*, 724 F.2d 711, 714 (8th Cir. 1984)) ("This court has held that 'a lack of sufficient financial resources to follow prescribed treatment to remedy a disabling impairment may be...an independent basis for finding justifiable cause for noncompliance [with prescribed treatment].'"). Yet, such is not the case here. *See supra* note 6 (explaining the court has searched the record and found no active prescription script for pain medication since the script for Gabapentin was removed in November 2012 by Dr. Swanson, AR 688-91). Claimant's argument now that she cannot afford her pain medication is moot given that she has not had an active script for such medication since late 2012.

From the court's review, the ALJ properly assessed claimant's credibility using the *Polaski* factors. Overall, the court finds that the ALJ's credibility determination that claimant is less than fully credible is supported by the evidence on the record as a whole.

### B. The ALJ's Hypothetical Question to the VE

The VE found that an individual with claimant's age, education, work experience, and RFC could perform the jobs of (1) janitor, (2) warehouse worker, and (3) hand packer. AR 28. Claimant argues that the ALJ erred in relying on the VE's response to an incomplete hypothetical question. Doc. 13, at 10.

The ALJ asked the following hypothetical question:

> Assume an individual the claimant's age, education, training and work history who can perform a medium range of work, as that term is defined under the regulations. Can occasionally climb ladders, ropes and scaffolds. Can frequently balance, stoop, kneel, crouch, crawl and climb ramps and stairs. This person can perform simple tasks that are not performed as an integral part of a team and which involves relatively few work place changes. [She] can occasionally interact with supervisors and

coworkers, but must avoid interaction with the general public. Could this person perform any of the claimant's past work? . . . If a person, because of mental health symptoms, isolates to the point that they don't even go into work on a particular day, how many days can they miss before there are no jobs? [VE answered up to two days a month] . . . . What if intrusive thoughts, whether they're hallucinations or otherwise, occurred during the workday to the point where the person's not concentrating on the task they are hired to perform? How much off task time will be tolerated before there are no jobs? [VE answered up to ten percent] . . . . Are these people allowed or these employees allowed to take unscheduled breaks to deal with mental health symptoms? [VE answered no] . . . . And you said basically they could be off task up to ten percent, but if they're off task more than that, then they're not able to keep that type of job? [VE answered yes] . . . . And for example, with the janitorial job, you'd have certain tasks that would be expected to be completed within a certain time frame? [VE answered yes]

AR 64–67. Claimant asserts that the hypothetical question did not accurately describe the restrictions of her mental impairments. Doc. 13, at 10. Claimant argues "the ALJ ignored the mental health conditions [in his hypothetical] and only put restriction upon [her] in dealing with the general public, not with staying on task and not with work attendance." Doc. 13, at 12. Basically, claimant asserts that given her history of not leaving her apartment for numerous days per month, and her bouts of severe depression and hallucinations, she cannot perform the jobs of janitor, warehouse worker, and hand packer. In other words, claimant argues that she will need to miss more than 2 days a month of work and that she cannot stay on task for 90% of the workday.

As the Eighth Circuit Court of Appeals succinctly stated in *Hillier v. Social Security Administration,*

Testimony based on hypothetical questions that do not encompass all relevant impairments cannot constitute substantial evidence to support the ALJ's decision." *Lacroix v. Barnhart,* 465 F.3d 881, 889 (8th Cir. 2006) (quotation omitted). Hypothetical questions should "set[ ] forth impairments supported by substantial evidence [on] the record and accepted

as true," *Goff v. Barnhart,* 421 F.3d 785, 794 (8th Cir. 2005) (quotation omitted), and "capture the 'concrete consequences' of those impairments," *Lacroix,* 465 F.3d at 889 (quoting *Roe v. Chater,* 92 F.3d 672, 676–77 (8th Cir. 1996)).

*Hillier v. Soc. Sec. Admin.*, 486 F.3d 359, 365 (8th Cir. 2007). Also, the ALJ's hypothetical question to the VE "needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012) (internal quotation and citation omitted). In other words, the ALJ is "not obligated to include limitations [in the hypothetical question] from opinions he properly disregarded." *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) (internal citation omitted). *See also Pearsall v. Massanari,* 274 F.3d 1211, 1220 (8th Cir. 2001) (internal citation omitted) ("The ALJ's hypothetical properly included all impairments that were accepted by the ALJ as true and excluded other alleged impairments that the ALJ had reason to discredit.").

Through careful review of the record, the court finds the ALJ properly included only those impairments of claimant that he found to be supported by substantial evidence on the record as a whole. *See supra* Section V(A) (discussing the court's finding that the ALJ's credibility determination was supported by the weight of the medical evidence and also finding that the evidence on the record supported the ALJ's finding that claimant had mild restrictions in daily life, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence and pace). The record supports the ALJ's finding that claimant could miss only up to two days a month and that she could concentrate for at least 90% of the workday. *See* Exhibits 2F, 3F, 7F (showing improvements in claimant's mood through regularly taken prescription medication); Exhibit 5F (claimant describing her concentration as being "fair"); Exhibit 10F (claimant receives an increased GAF score of 56, which is indicative of only *moderate symptoms*);

Exhibit 11F (recent therapy session notes report claimant as having good concentration, pleasant mood, no hallucinations or delusions, no sleep problems, taking medication as prescribed). Thus, the ALJ's hypothetical question to the VE was proper. And the ALJ's reliance on the VE's response to the hypothetical question was proper also.

## VII. CONCLUSION

The court sympathizes with claimant for the hardships and difficulties associated with being a person of transgender status. Yet, the court's task is to act in a deferential capacity and to affirm the ALJ's decision if such decision is supported by substantial evidence on the record as a whole. After a thorough review of the entire record, the court concludes that the ALJ's decision to deny claimant's disability benefits is indeed supported by such evidence. Accordingly, the court **affirms** the decision of the ALJ. Judgment shall be entered in favor of the Commissioner and against claimant.

**IT IS SO ORDERED** this 4th day of August, 2016.

_____
C.J. Williams
United States Magistrate Judge
Northern District of Iowa